**CITIZENS FINANCIAL SERVICES, FSB, Appellant–Plaintiff,**

v.

**INNSBROOK COUNTRY CLUB, INC., and The New Innsbrook Country Club, LLC, Appellee–Defendant.**

**No. 45A04–0411–CV–595.**

Court of Appeals of Indiana.

Sept. 8, 2005.

Rehearing Denied Nov. 9, 2005.

Lily M. Schaefer, Lambert C. Genetos, Kopko Genetos & Retson LLP, Merrillville, for Appellant.

Harold Abrahamson, John P. Reed, Abrahamson, Reed & Bilse, Hammond, for Appellee.

## OPINION

SHARPNACK, Judge.

In this interlocutory appeal, Citizens Financial Services, FSB ("Citizens") appeals the trial court's denial of its petition for appointment of a receiver for mortgaged real estate.[1] Citizens raises three issues, which we consolidate and restate as whether the trial court abused its discretion by denying Citizens' petition for appointment of a receiver. We reverse and remand.[2]

The relevant facts follow. Citizens made two loans to Innsbrook Country Club, Inc. ("Innsbrook"). The first loan was on a promissory note, dated September 28, 2001, that after some modifications amounted to $750,000 and was secured by a mortgage on the real property of the Innsbrook Country Club, located at 6701 Taft Street in Merrillville, Indiana. The

---

1. Citizens' interlocutory appeal is an appeal of right from an order "refusing to appoint a receiver" under Ind. Appellate Rule 14(A)(6).

2. We direct Citizens' attention to Ind. Appellate Rule 46(A)(10), which requires an appellant's brief to "include any written opinion, memorandum of decision or findings of fact and conclusions thereon relating to the issues raised on appeal."
   We also remind Citizens that Ind. Appellate Rule 50(A)(2) requires the appellant to include in its Appellant's Appendix the "pleadings and other documents from the Clerk's Record in chronological order that are necessary for resolution of the issues raised on appeal." Citizens did not include the Defendants' answers, counterclaim, response and objection to plaintiff's verified petition for appointment of a receiver with notice, or memorandum in response to plaintiff's motion to dismiss counterclaim. The Appellees did not file an appendix. Under Ind. Appellate Rule 50(A)(3) an appellee's appendix, if required, shall contain all the materials required in an appellant's appendix except those materials already contained in the appellant's appendix.

second loan was on a promissory note, dated May 7, 2002, that amounted to $1,460,000 and was secured by a mortgage on the real property of the Innsbrook Country Club.

Both of the mortgages contained the following clause:

Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale and to collect the Rents from the Property and apply the proceeds over and above the cost of the receivership against the Indebtedness.

Transcript at 6–7, Exhibit B at 9, Exhibit G at 9. Both mortgages also contained the following clause:

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to the Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

Exhibit B at 11, Exhibit G at 11.

New Innsbrook Country Club ("New Innsbrook") is an entity formed by Ronald McColly and Jim Gagan in 2003. In the summer of 2003, McColly called Jim Prisby, an employee of Citizens, and requested a meeting regarding the purchase of the Innsbrook property. McColly told Prisby and Zoran Koricanac, an employee of Citizens, that McColly and Gagan were contemplating making an offer to purchase Innsbrook Country Club. McColly asked what Citizens would be willing to do with

the existing loans if McColly and Gagan took them over. Koricanac called McColly and told him that the terms of the loan would be that McColly and Gagan could assume the loans, "the interest rate would be prime floating, a two-year term, and personal guaranties [would need to be executed] by [McColly] and ... Gagan." Transcript at 32. McColly told Koricanac that McColly and Gagan would agree to those terms. Citizens never issued New Innsbrook a loan commitment letter.

McColly and Gagan made an offer to purchase the Innsbrook Country Club. McColly and Gagan promised to keep the club private and guarantied improvements. Members of the Innsbrook Country Club voted to sell the club to McColly and Gagan. The record does not reveal whether the agreement to sell the club was in writing.

McColly also asked Citizens for a million dollar line of credit for the purpose of building a swimming pool. Koricanac said, "If you and Mr. Gagan post a $500,000 certificate of deposit, we will give you the million dollar line of credit." Transcript at 34. McColly told Koricanac that he and Gagan would agree to the terms.

On October 31, 2003, McColly again met with Prisby and Koricanac. Prisby and Koricanac indicated that they wanted to make a new loan for $3,200,000 because the "other loan [was] not assumable." Transcript at 41. Prisby and Koricanac said they wanted $500,000 collateral, personal guarantees, an appraisal, and $6,000 to $7,000 for attorney fees to draw up a mortgage. McColly told them, "My partner lives in California in the winter" and "I can't go back to him every week with new terms that you come up with. So if you want to work this out with him, fine," and "I have done all that I could do." Transcript at 41. Citizens never issued new loans to McColly and Gagan.

On November 12, 2003, Innsbrook conveyed the property to New Innsbrook by a warranty deed. The warranty deed contained the following provisions:

INNSBROOK COUNTRY CLUB, INC., formerly known as Gary Country Club, Inc., an Indiana corporation, of Lake County, Indiana, as Grantor conveys and warrants to THE NEW INNSBROOK COUNTRY CLUB, LLC, an Indiana limited liability company, of Lake County, Indiana, in consideration of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the following described real estate in Lake County, in the State of Indiana, to wit:

\* \* \* \* \*

SUBJECT, NEVERTHELESS, TO THE FOLLOWING:

\* \* \* \* \*

4. A certain mortgage recorded in the Lake County Recorders office as document number 2001–083565.
5. A certain mortgage recorded in the Lake County Recorders office as document 2002–045990.

Plaintiff's Exhibit H.

Despite the fact that Citizens did not loan the money, McColly spent about $1,100,000 on a swimming pool at the club. The first note has been in default since October 28, 2003. The second note has been in default since November 7, 2003.

On February 13, 2004, Citizens filed a complaint against Innsbrook and New Innsbrook. The complaint alleged that Innsbrook defaulted in the payment of the principal and interest on both loans. The complaint asked that the mortgages be foreclosed.

Innsbrook and New Innsbrook filed an answer and counterclaims. On May 20, 2004, Citizens filed a verified petition for the appointment of a receiver. On June 10, 2004, Citizens filed a motion to dismiss Innsbrook's and New Innsbrook's counterclaims. On August 13, 2004, the trial court held a hearing on Citizens' petition for appointment of a receiver and motion to dismiss.

The trial court later issued a written order, which provided, in pertinent part:

\* \* \* \* \*

### FINDINGS OF FACT

\* \* \* \* \*

E. **Relevant Facts Established by the Evidence Adduced at the August 13, 2004 Hearing on CFS' Verified Petition to Appoint a Receiver with Notice.**

1. Mr. Tom Peters is an employee of CFS, and has been so employed for two-and-a-half years, last past. [sic] Mr. Peters is familiar with the two loans made by CFS to Old Innsbrook.

\* \* \* \* \*

2. The principal amount currently owed on the loan, referenced in Exhibits A through E, is $744,031 with a payoff amount of $794,251.60. According to Mr. Peters, this loan went into default on October 28, 2003.

3. The following language appears in the mortgage document identified as Exhibit B:

"Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect Rents from the Property and apply to proceeds, over and above the cost of the receivership, against the indebtedness."

4. Exhibit F is a promissory note between CFS and Old Innsbrook, in the

amount of $1,460,000, dated May 2, 2002. The actual Mortgage relating to the promissory note identified as Exhibit F, is contained within Exhibit B.

\* \* \* \* \*

6. The principal amount of the loan referenced in Exhibits B and F is $1,432.081, [sic] with a current payoff amount of $1,571,767.64.

7. That said loan went into default on November 7, 2003, and the Mortgages represented by Exhibits B and G contain the same language previously quoted in Finding No. 3, supra.

8. Mr. Peters testified that he was contacted by Ron McColly, a member of New Innsbrook, in 2003 asking whether CFS would entertain a new borrower for the loans. Mr. Peters referred Mr. McColly to other individuals at CFS for the stated reason that he was handling the old account, and could not handle a new borrowing request.

9. Mr. Peters acknowledges that Mr. McColly was then contacted through Mr. Peters' referral, by the head of commercial loans for CFS, Mr. Zoran Koricanac.

\* \* \* \* \*

*Mr. Ronald McColly:*

1. In August of 2003, Messrs. McColly and Gagan, the sole members of The New Innsbrook Country Club, LLC, had a meeting with Mr. James Prisby and Mr. Zoran Koricanac, top lending officials of CFS, at the CFS branch located in Munster, Indiana, regarding the purchase of the property owned by Old Innsbrook, and the position of CFS as to any assumption of the existing loans under modified terms. Within three (3) hours of said meeting, Mr. McColly was informed by Mr. Koricanac that CFS would permit an assumption of the loans at terms dissimilar to those contained in the original loan documents, (interest at prime floating, interest only for two years, etc.), so long as CFS had personal guarantees from Mr. McColly and Mr. Gagan. After some additional negotiations regarding the interest rate, Mr. McColly, on behalf of New Innsbrook, agreed to the terms offered by CFS.

2. As a result of the aforesaid offer and acceptance, New Innsbrook made an offer to purchase the assets of Old Innsbrook, which offer was accepted by an overwhelming majority of the Membership. After the acceptance by Old Innsbrook of the offer to purchase, Mr. McColly again contacted CFS to inquire as to whether CFS would be willing to provide a one-million dollar ($1,000,000) line of credit to fund certain of the improvements of the country club facility.

3. CFS, through Zoran Koricanac, informed Mr. McColly that it would issue the $1,000,000.00 line of credit to New Innsbrook, if Mr. McColly and Mr. Gagan would execute personal guarantees and purchase a $500,000.00 Certificate of Deposit to be held as security for the aforementioned line of credit. Mr. McColly and Mr. Gagan agreed to these terms, and they possessed more than sufficient personal wealth to purchase the aforementioned Certificate of Deposit.

4. On October 31, 2003, CFS, through Mr. James Prisby and Mr. Zoran Koricanac, informed Mr. McColly that the agreement to assume the Old Innsbrook's loans, albeit under different terms and conditions, had been unilaterally cancelled by CFS, under the guise that the mortgages were "not assumable".

5. CFS proposed issuing a new loan for $3,200,000.00, using the property, the $500,000.00 Certificate of Deposit, and

the personal guarantees of Mr. McColly and Mr. Gagan as security. In addition, CFS wanted to have a new appraisal and new mortgages prepared at a cost of $6,000.00 to $7,000.00. These terms represent a substantial departure from the terms agreed upon prior to the offer from New Innsbrook to purchase the assets of Old Innsbrook, and Old Innsbrook's acceptance of that offer.

6. New Innsbrook refused to assent to the new terms as stated by CFS. New Innsbrook seeks to have the terms of the agreement, prior to CFS's unilateral cancellation thereof, and relied upon by New Innsbrook when making its offer to purchase the assets of Old Innsbrook, enforced.

7. New Innsbrook, commensurate with its agreement to purchase Old Innsbrook's assets, has constructed a new swimming pool facility, and bathhouse, and has purchased new furniture, installed new electrical, gas, and sanitary sewer lines and improved the interior spaces of the Innsbrook Country Club facility to a substantial degree. (Defendants' Exhibits A, C, and D).

8. The court does not feel that there is any material conflict between the testimony of Mr. Peters and Mr. McColly, concerning the fact that the Old Innsbrook loans were to be assumed by New Innsbrook, and that certain of the terms of those lendings were to be modified. To the extent that there is any conflict, or any lack of specificity or particularity in the testimony of these two gentlemen, the court credits the testimony of Mr. McColly.

9. It makes no sense that CFS would not hasten to substitute a new debtor-borrower, with extremely ample financial strength, for Old Innsbrook, which was woefully in default and operating in a negative cash flow mode.

\* \* \* \* \*

## CONCLUSIONS OF LAW

\* \* \* \* \*

### B. The Appointment Of A Receiver Is Not Justified In This Case.

The controlling statutory framework relating to whether a receiver will be appointed can be found within I.C. 32–30–5–1, as follows:

"IC 32–30–5–1

Appointment of receivers; cases

Sec. 1. A receiver may be appointed by the court in the following cases:

\* \* \* \* \*

(4) In actions in which a mortgagee seeks to foreclose a mortgage. However, upon motion by the mortgagee, the court shall appoint a receiver if, at the time the motion is filed, the property is not occupied by the owner as the owner's principal residence and:

\* \* \* \* \*

(C) either the mortgagor or the owner of the property has agreed in the mortgage or in some other writing to the appointment of a receiver;

\* \* \* \* \*

This court, in the following analysis, will apply this statutory framework to the facts as found in Section 1, and the contents of the exhibits admitted into evidence.

\* \* \* \* \*

The original mortgagor, Innsbrook Country Club, Inc., agreed that

"Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property

preceding foreclosure or sale, and to collect Rents from the Property and apply to proceeds, over and above the cost of the receivership, against the indebtedness."

The New Innsbrook Country Club, LLC, is shown by the evidence to have assumed the attached mortgages, but with agreed upon terms different from those contained in the attached mortgages. The precise content of those terms is a fact issue to be determined by the ultimate finder of fact. The preceding Special Findings of Fact aptly illustrate this point.

The phrase: "Lender shall have the right to have a receiver appointed", does not, in and of itself, make the appointment of a receiver merely a ministerial duty of this court. The contract language merely affirms that the lender has the right to petition this court for the appointment, and that the lender is not in some way barred from making the petition. The appointment, itself, however, is a matter within the sound discretion of this court.

The law, applied to the weight of the evidence currently before the court, dictates that a new mortgage, or at least one with very modified terms, was formed as between The New Innsbrook Country Club, LLC, on the one hand, and CFS, on the other. *Whiteco Industries, Inc. v. Kopani,* 514 N.E.2d 840, 844–45 (Ind.Ct.App.1987) (citing Restatement (Second) of Contracts § 139 (1981))[, *trans. denied* ]. As the preceding sections of this decision point-out, The New Innsbrook Country Club, LLC, reasonably relied on CFS's promise, effectively negating the operation of the Statute of Frauds. The Statute of Frauds is not applicable to the present case because the defendants reasonably relied on the plaintiff's promise to allow an assumption of the existing debt, on specific terms. *Id.* [Citizens] is correct to point out the general rule regarding agreements to loan money. In general, an agreement to lend money must be in writing in order to be binding upon the parties. I.C. 26–2–9–4. However, as is the case with so many statutory and common law rules, a very important, and particularly relevant exception is applicable in this case. As stated by the Indiana Court of Appeals, in *Whiteco,* a claim can be removed from the Statute of Frauds where the "reliance injury is so substantial and independent as to constitute an unjust and unconscionable injury and loss".

\* \* \* \* \*

The promisor, (CFS), certainly should have expected, and, in point of actual fact, actually knew that The New Innsbrook would rely upon CFS' promise. Said promise to allow an assumption of the mortgage did, in fact, induce Innsbrook to make an offer to purchase the country club, which offer was promptly accepted by the membership. The obvious application of the exception leads to the next inquiry: "Whether injustice can be avoided only by enforcement of the promise:". *Id.* The "significant" circumstances listed in the Restatement militate in favor of enforcing the promise, in order to avoid an injustice.

\* \* \* \* \*

The catastrophic nature of the injury and loss to the defendants, sans the enforcement of the promise sought by the defendants', is certainly unconscionable. The New Innsbrook has already expended an excess of One–Million dollars making improvements to the property. Should CFS be permitted to renege on its promise, the members of the club will be left with nothing.

The precedent of *Sees v. Bank One, Indiana, N.A.*, 804 N.E.2d [227] (Ind.Ct. App.2004), has been cited in CFS' briefs for the proposition that agreements to lend money must be in writing, in order to be enforceable. The *Sees* opinion, however, is of no precedential value to this court. (Ind. Rule of Appellate Procedure 58). According to the Appellate Rules, the *Sees* opinion was vacated the moment the Supreme Court granted the Petition to Transfer. The *Sees* opinion, (now vacated), is the only opinion in Indiana dealing with the language contained in I.C. 26–2–9–4, regarding the writing requirement for agreements to lend money. The Court of Appeals held that I.C. 26–2–9–4 was valid and binding on the parties, and did not rule that any exceptions to the writing requirement, under the specific circumstances in *Sees*, were inapplicable. This court will not speculate as to whether the Indiana Supreme Court granted transfer simply to affirm the Court of Appeals, or to reverse the application of I.C. 26–2–9–4. For all intents and purposes, I.C. 26–2–9–4 is simply a re-codification of the Statute of Frauds; and the same analytical framework regarding any exceptions to the Statute of Frauds will apply.

\* \* \* \* \*

Clearly, the present case does not present and [sic] clear and extreme necessity. Put simply, there is nothing to collect and deposit with the Court's Clerk. Nobody is absconding with monies due to CFS, and no such allegation has been made. The plaintiff has made no showing, even by naked allegation, of any advantage to be gained by the appointment of a receiver, and, therefore, none should be appointed. As the previous analysis of I.C. § 32–30–5–1, as applied to the facts of this case, illustrates, the special statutory provision is not applicable to this case, and "[t]he courts generally do not favor such a radical remedy as a receivership" absent the clear and unequivocal application of a special statute.

Even if the appointment of a receiver were [sic] triggered by the language in the mortgage documents, (assuming, arguendo, that those documents are still in full force and effect), the appointment of a receiver would be pointless under the present facts and circumstances. *Bailey v. Holliday*, 806 N.E.2d 6, 10 (Ind.Ct. App.2004) ("We are required to determine and apply the legislative intent underlying the statute and to construe the statute in such a way as to prevent absurdity and hardship and to favor public convenience.") (citing *Livingston v. Fast Cash USA, Inc.*, 753 N.E.2d 572, 575 (Ind.2001)). As stated previously, and clear from the record of proceedings, the country club facility is operating at a net loss. The only thing holding the operations together is the continued influx of capital and operating cash from the members of The New Innsbrook Country Club, LLC, namely Messer's [sic] Ronald McColly and James Gagan. The appointment of a receiver would not generate any monies for deposit with the court, and would provide CFS with absolutely no additional security, which is the sole purpose for the appointment of a receiver. This result was clearly not intended by the legislature when it passed I.C. 32–30–5–1, and that statutory provision will not be manipulated by this court to effect the absurd result of appointing a receiver whose only duty would be to inform the court when the country club is defunct. In fact, the appointment of a receiver would serve the exact opposite purpose of that intended by the legislature. The appointment would render the asset less valuable to the creditor seeking to foreclose its mortgage. This is simply not the

type of case contemplated by the legislature when it passed I.C. 32–30–5–1.

### *JUDGMENT*

**IT IS THEREFORE CONSIDERED, ADJUDGED AND DECREED** that plaintiff's Verified Petition for the Appointment of a Receiver with Notice is hereby DENIED and there is no need for the court to schedule a hearing into the qualifications of the parties' proposed receivers, or into the proper bond and related financing requirements to which any receiver would have to be bound in the circumstances of this case.

Appellant's Appendix at 8–29.

■■■ The sole issue is whether the trial court erred by denying Citizens' petition to appoint a receiver. When reviewing an order on a motion to appoint a receiver, we do not reweigh the evidence but construe the evidence and reasonable inferences in the trial court's favor. *Key-Bank Nat'l Ass'n v. Michael,* 737 N.E.2d 834, 848 (Ind.Ct.App.2000). "Before we will reverse such an order we must find an abuse of discretion which prejudices the complaining party." *Id.* (quoting *Farver v. DeKalb County Farm Bureau,* 576 N.E.2d 1361, 1362 (Ind.Ct.App.1991)).

The appointment of a receiver in actions in which a mortgagee seeks to foreclose a mortgage is governed by Ind.Code § 32–30–5–1 (2004), which provides, in pertinent part:

A receiver may be appointed by the court in the following cases:

\* \* \* \* \*

(4) In actions in which a mortgagee seeks to foreclose a mortgage. However, upon motion by the mortgagee, the court shall appoint a receiver if, at the time the motion is filed, the property is not occupied by the owner as the owner's principal residence and:

(A) it appears that the property is in danger of being lost, removed, or materially injured;

(B) it appears that the property may not be sufficient to discharge the mortgaged debt;

(C) either the mortgagor or the owner of the property has agreed in the mortgage or in some other writing to the appointment of a receiver;

(D) a person not personally liable for the debt secured by the mortgage has, or is entitled to, possession of all or a portion of the property;

(E) the owner of the property is not personally liable for the debt secured by the mortgage; or

(F) all or any portion of the property is being, or is intended to be, leased for any purpose.

Citizens argues that the requirements of Ind.Code 32–30–5–1(4)(C) have been met.[3]

Citizens argues that the trial court abused its discretion by denying its motion for a receiver because the appointment of a receiver is mandatory where the trial court finds that the statutory criteria of Ind.Code § 32–30–5–1(4) have been met. Citizens argues that "I.C. 32–30–5–1(4) dictates that where, as here, a mortgagee seeks to foreclose its mortgage, and the mortgagor does not occupy the premises as a principal residence, and, has agreed in writing to the appointment of a receiver, the trial court *shall* appoint a receiver." Appellant's Brief at 9.

■■■ Citizens' argument requires us to apply Ind.Code § 32–30–5–1. We may not

---

**3.** On appeal, the appellees address each subsection of I.C. § 32–30–5–1(4). The statute requires only one subsection of Ind.Code § 32–30–5–1(4) be met to require the trial court to appoint a receiver. Citizens asserts only that Ind.Code § 32–30–5–1(4)(C) has been met. Thus, we only address Ind.Code § 32–30–5–1(4)(C).

construe a statute when its plain language is unambiguous. *Dep't of Revenue of State of Ind. v. There To Care, Inc.*, 638 N.E.2d 871, 873 (Ind.Ct.App.1994), *trans. denied.* Rather, we presume words appearing in the statute were intended to have meaning, and we endeavor to give those words their plain and ordinary meaning absent ambiguity or a clearly manifested purpose to do otherwise. *Indiana Dep't of Human Services v. Firth*, 590 N.E.2d 154, 157 (Ind. Ct.App.1992), *trans. denied.* Here, the language of the statute is unambiguous. The trial court "*shall* appoint a receiver if ... the property is not occupied by the owner as the owner's principal residence and ... either the mortgagor or the owner of the property has agreed in the mortgage or in some other writing to the appointment of a receiver." I.C. § 32–30–5–1(4). (emphasis added).

In *Farver*, the Farvers, the mortgagors, brought an interlocutory appeal from the trial court's order appointing a receiver to take possession of their real estate. *Farver*, 576 N.E.2d at 1362. The issue was "whether the trial court's appointment of a receiver over the Farver's leased farm and business real estate was an abuse of discretion." *Id.* We held:

> In fact, it was required to appoint a receiver by I.C. 34–1–12–1(4).[4] The

statute clearly requires the court to appoint a receiver when the general conditions of section (4) and any one of its six conditions (A)-(F) are met. The court has discretion whether to appoint a receiver under other sections of the statute but under section (4) appointment is mandatory once the statutory conditions are met.

*Id.* at 1362–1363.

To meet the requirements of Ind.Code § 32–30–5–1(4)(C), Citizens must show: (1) that it, as mortgagee, sought to foreclose the mortgage; (2) at the time the motion is filed, the property is not occupied by the owner as the owner's principal residence; and (3) either the mortgagor or the owner of the property has agreed in the mortgage or in some other writing to the appointment of a receiver.

On February 13, 2004, Citizens filed a complaint against Innsbrook and New Innsbrook seeking "that Plaintiff's mortgage be foreclosed against all Defendants hereto as a first and prior lien, and that said mortgaged real property be ordered sold to pay and satisfy the same, and the balance as the Court may order and direct, and for all further and proper relief." Appellant's Appendix at 33, 37. Further, the trial court entered the following findings:

---

**4.** Ind.Code § 34–1–12–1(4) was repealed by Pub.L. No. 1–1998, § 221 (eff. July 1, 1998). Ind.Code § 34–1–12–1 is substantially similar to Ind.Code § 32–30–5–1. Ind.Code § 34–1–12–1(4) (1991) provided:

(4) In actions in which a mortgagee seeks to foreclose a mortgage, except that upon motion by the mortgagee the court shall appoint a receiver if at the time the motion is filed the property is not occupied by the owner as the owner's principal residence and:

(A) it appears that such property is in danger of being lost, removed, or materially injured;

(B) it appears that such property may not be sufficient to discharge the mortgaged debt;

(C) either the mortgagor or the owner of the property has agreed in the mortgage or in some other writing to the appointment of a receiver;

(D) a person not personally liable for the debt secured by the mortgage has, or is entitled to, possession of all or a portion of the property;

(E) the owner of the property is not personally liable for the debt secured by the mortgage; or

(F) all or any portion of the property is being, or is intended to be, leased for any purpose.

2. The principal amount currently owed on the loan, referenced in Exhibits A through E, is $744,031 with a payoff amount of $794,251.60. According to Mr. Peters, this loan went into default on October 28, 2003.

\* \* \* \* \*

6. The principal amount of the loan referenced in Exhibits B and F is $1,432[,]081, with a current payoff amount of $1,571,767.64.

7. That said loan went into default on November 7, 2003, and the Mortgages represented by Exhibits B and G contain the same language previously quoted in Finding No. 3, supra.

Appellant's Appendix at 10–11. Thus, Citizens met the first element of seeking a foreclosure on a defaulted mortgage. Second, the property was not being used as a principal residence as it was being used as a country club.

Citizens must also show that "either the mortgagor or the owner of the property has agreed in the mortgage or in some other writing to the appointment of a receiver" as required by Ind.Code. § 32–30–5–1(4)(C). The trial court concluded:

> The New Innsbrook Country Club, LLC, is shown by the evidence to have assumed the attached mortgages, but with agreed upon terms different from those contained in the attached mortgages. The precise content of those terms is a fact issue to be determined by the ultimate finder of fact.

Appellant's Appendix at 20. New Innsbrook argues that "[b]asic jurisprudence dictates that when a party seeks the enforcement of a contract term, that the contract on which the requested enforcement is based be in full force and effect." Appellee's Brief at 14. New Innsbrook argues that *Farver* is distinguishable from this case because in *Farver* the "mortgage documents containing the parties' agree-ment to the appointment of receiver were not in question as to their legal effectiveness." Appellee's Brief at 15. New Innsbrook also argues that evidence that a new loan agreement was formed between Citizens and New Innsbrook supports the denial of Citizens' petition to appoint a receiver. We disagree.

Citizens argues that the verbal agreement between Citizens and New Innsbrook needed to be in writing pursuant to the statute of frauds. Ind.Code § 26–2–9–4 (2004), which governs actions brought by a debtor, provides:

> A debtor may bring an action upon a credit agreement only if the agreement:
>
> (1) is in writing;
>
> (2) sets forth all material terms and conditions of the credit agreement, including the loan amount, rate of interest, duration, and security; and
>
> (3) is signed by the creditor and the debtor.

The statute defines a "debtor" as a "person who ... owes money to a creditor." I.C. § 26–2–9–3. Furthermore, the statute defines "credit agreement" as "an agreement to ... lend or forbear repayment of money." I.C. § 26–2–9–1. Thus, the assumption of a mortgage qualifies as a credit agreement.

The trial court's order provided:

> As stated by the Indiana Court of Appeals, in *Whiteco*, a claim can be removed from the Statute of Frauds where the "reliance injury is so substantial and independent as to constitute an unjust and unconscionable injury and loss".

\* \* \* \* \*

Said promise to allow an assumption of the mortgage did, in fact, induce Innsbrook to make an offer to purchase the

country club, which offer was promptly accepted by the membership.

\* \* \* \* \*

The catastrophic nature of the injury and loss to the defendants, sans the enforcement of the promise sought by the defendants', is certainly unconscionable. The New Innsbrook has already expended an excess of One–Million dollars making improvements to the property. Should CFS be permitted to renege on its promise, the members of the club will be left with nothing.

Appellant's Appendix at 21–22.

In *Brown v. Branch*, 758 N.E.2d 48, 52 (Ind.2001), our supreme court held:

[R]egardless of the type of estoppel asserted, as our Court of Appeals has observed:

[I]n order to establish an estoppel to remove the case from the operation of the Statute of Frauds, the party must show [ ] that the other party's refusal to carry out the terms of the agreement has resulted not merely in a denial of the rights which the agreement was intended to confer, but the infliction of an unjust and unconscionable injury and loss.

In other words, neither the benefit of the bargain itself, nor mere inconvenience, incidental expenses, etc. short of a reliance injury so substantial and independent as to constitute an unjust and unconscionable injury and loss are sufficient to remove the claim from the operation of the Statute of Frauds.

*Whiteco Indus., Inc. v. Kopani*, 514 N.E.2d 840, 845 (Ind.Ct.App.1987) (citations omitted), *trans. denied.*

*Id.* Our supreme court concluded, "Thus, while it is true that the doctrine of promissory estoppel may remove an oral agreement from the operation of the Statute of Frauds, it is also true that the party as-

serting the doctrine carries a heavy burden establishing its applicability." *Id.*

■ Promissory estoppel encompasses the following elements: "(1) a promise by the promis[ ]or; (2) made with the expectation that the promisee will rely thereon; (3) which induces reasonable reliance by the promisee; (4) of a definite and substantial nature; and (5) injustice can be avoided only by enforcement of the promise." *Id.* Citizens argues that the elements of promissory estoppel have not been met.

Citizens argues that "New Innsbrook did not make these improvements until *after* it learned that Citizens had reneged on the promise." Appellant's Brief at 17. At the hearing, the following exchange occurred between counsel for New Innsbrook and McColly:

Q Did there come a time when you were advised by Citizens that the agreement you reached was not going to [be] honored by Citizens?

A On October 31st, and I remember it because it was Halloween, is that I had a meeting with Mr. Jim Prisby and Mr. Zoran Koricanac. And when I went into that meeting, what they stated was is that they were going to make us a new loan for $3,200,000, and that—and I asked, "Why?" I said, "That wasn't the terms of it." They stated, "Well, the other loan is not assumable."

Transcript at 41. At the August 13, 2004 hearing, McColly testified, "Now all of this equipment was purchased within the last six months." Transcript at 39. Thus, New Innsbrook did not make the improvements until after Citizens informed them that the loans were not assumable.

Citizens also argues that "New Innsbrook purchased Innsbrook *after* Citizens reneged on its promise." Appellant's Brief at 17. The following exchange occurred between McColly and counsel for Citizens:

Q I hand you now what has been marked for identification as Exhibit H. I ask you if you can identify it?

A It's a warranty deed.

Q From who to who?

A From Innsbrook Country Club to The New Innsbrook Country Club, LLC.

\* \* \* \* \*

Q This deed was dated November 12, 2003; correct?

A That's correct.

Q These discussions that you had with Citizens, okay, in this last meeting, was that prior to this date?

A Yes.

Q So that meeting where the 3.1 million was discussed, et cetera, et cetera, the attorney fees that was all prior to that; correct?

A Yes.

Transcript at 42–43. Accordingly, we must conclude that New Innsbrook purchased the property after the discussion with Citizens in which Citizens told them they would not allow New Innsbrook to assume the loans at the different terms.[5]

The sequence of events does not suggest that New Innsbrook relied on Citizen's promises that it could assume the Innsbrook's mortgage at a different rate. Accordingly, New Innsbrook has not met the elements of promissory estoppel and has failed to show an exception to the requirement that the agreement assuming the mortgage had to be in writing pursuant to Ind.Code § 26–2–9–4. *See Wabash Grain, Inc. v. Bank One*, 713 N.E.2d 323, 326–327 (Ind.Ct.App.1999) (holding that the loan recipient failed to demonstrate "how its reliance upon an oral agreement to extend the loan caused it 'an injury so substantial and independent as to constitute an unjust and unconscionable injury.'") Thus, the statute of frauds applies and the verbal agreement to assume the loans does not constitute an enforceable agreement.

New Innsbrook bought the property subject to the mortgages. Both mortgages provide:

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

\* \* \* \* \*

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect Rents from the Property and apply to proceeds, over and above the cost of the receivership, against the indebtedness.

Exhibits, Mortgage at 9.

The trial court found:

The phrase: "Lender shall have the right to have a receiver appointed", does not, in and of itself, make the appointment of a receiver merely a ministerial duty of this court. The contract language merely affirms that the lender

---

**5.** There is no evidence of a prior written agreement. The statute of frauds would require a written agreement for the sale to be enforceable. *See* Ind.Code § 32–21–1–1, which provides: "(b) A person may not bring any of the following actions unless the promise, contract, or agreement on which the action is based, or a memorandum or note describing the promise, contract, or agreement on which the action is based, is in writing and signed by the party against whom the action is brought or by the party's authorized agent: .... (4) An action involving any contract for the sale of land."

has the right to petition this court for the appointment, and that the lender is not in some way barred from making the petition. The appointment, itself, however, is a matter within the sound discretion of this court.

Appellant's Appendix at 20. New Innsbrook suggests that Citizens "simply could have included a provision that stated, 'A receiver shall be appointed in the event of default.'" Appellee's Brief at 16–17. New Innsbrook claims that the provision in the note and mortgage only permitted Citizens "the right to petition the court to have a receiver appointed." *Id.* at 16. We disagree.

■ New Innsbrook argues that "[i]f the actual mortgage provision is in any way ambiguous, that ambiguity must be interpreted against CFS, the drafter of the provision." Appellee's Brief at 17. New Innsbrook cites three cases to support this proposition. *MPACT Const. Group, LLC v. Superior Concrete Constructors, Inc.,* 802 N.E.2d 901, 910 (Ind.2004); *Smith v. Sparks Milling Co.,* 219 Ind. 576, 603, 39 N.E.2d 125, 135 (1942); and *Bicknell Minerals, Inc. v. Tilly,* 570 N.E.2d 1307, 1313 (Ind.Ct.App.1991), *reh'g denied, trans. denied.* The cases cited by New Innsbrook stand for the proposition that ambiguity must be interpreted against the drafter. However, we must first determine whether an ambiguity exists in the contract. *See MPACT,* 802 N.E.2d at 910 (holding "When there is ambiguity in a contract, it is construed against its drafter.") A contract "is ambiguous only if it is 'susceptible to more than one interpretation and rea-

sonably intelligent persons would differ as to its meaning.'" *USA Life One Ins. Co. of Indiana v. Nuckolls,* 682 N.E.2d 534, 538 (Ind.1997) (quoting *Commercial Union Ins. v. Moore,* 663 N.E.2d 179, 181 (Ind.Ct. App.1996), *trans. denied* ).

The mortgage provides that "Lender shall have the right to have a receiver appointed." Exhibits, Mortgage at 9. A contract is "a legal relationship consisting of the rights and promises constituting an agreement between the parties that gives each a legal duty to the other and also the right to seek a remedy for the breach of those duties." BLACK'S LAW DICTIONARY 322 (6th ed.1990). A right is "a power, privilege, faculty, or demand, inherent in one person and incident upon another" and "a legally enforceable claim of one person against another, that the other shall do a given act, or shall not do a given act." *Id.* at 1324. By defining the words used in the contract, we do not believe reasonably intelligent persons would find it subject to more than one interpretation. *See Boswell v. Lyon,* 401 N.E.2d 735, 740 (Ind.Ct.App.1980). Given the language of the provision in the mortgage, we must conclude that "either the mortgagor or the owner of the property ... agreed in the mortgage or in some other writing to the appointment of a receiver." I.C. 32–30–5–1(4). Thus, Citizens has met the requirements of Ind.Code § 32–30–5–1(4), and the failure to appoint a receiver pursuant to Citizens' request was an abuse of discretion.[6] *See, e.g., Farver,* 576 N.E.2d at 1362–1363 (holding that appointment of a

---

**6.** New Innsbrook argues that "the facts and circumstances of the present case clearly indicate that the appointment of a receiver would serve absolutely no purpose, and would not provide any of the protections intended by the statutory framework." Appellee's Brief at 21. Our supreme court has held, "When the word 'shall' appears in a statute, it is construed as mandatory rather than directory unless it ap-

pears clear from the context or the purpose of the statute that the legislature intended a different meaning." *United Rural Elec. Membership Corp. v. Indiana & Michigan Elec. Co.,* 549 N.E.2d 1019, 1022 (Ind.1990), *reh'g denied.* We cannot say that it appears clear from the context or the purpose of the statute that the legislature intended a different meaning. *See Farver,* 576 N.E.2d at 1362–1363.

receiver is mandatory if section four and any one of the conditions are met); *Key-Bank*, 737 N.E.2d at 847 (relying on *Farver* and holding that KeyBank met the conditions for the mandatory appointment of a receiver).

For the foregoing reasons, we reverse the trial court's denial of Citizens' petition for appointment of a receiver and remand for proceedings consistent with this opinion.

Reversed and remanded.

VAIDIK, J., and MAY, J., concur.