**WELLS FARGO BANK, N.A., as Trustee for the Registered Holders of Commercial Mortgage Acceptance Corp., Commercial Pass Through Certificates, Series 1998–C–2, acting by and through its Special Servicer, Midland Loan Services, Inc., and Midland Loan Services, Inc., Appellants/Cross–Appellees,**

v.

**TIPPECANOE ASSOCIATES, LLC, Larry D. Contos, and Paul M. Nicholson, Appellees/Cross–Appellants,**

**and**

**Scatterfield Road Associates, LLC, Appellee.**

No. 79A04–0906–CV–354.

Court of Appeals of Indiana.

March 10, 2010.

Rehearing Denied May 11, 2010.

Alan K. Mills, Joseph C. Chapelle, Ethel H. Badawi, Barnes & Thornburg LLP, Indianapolis, IN, Attorneys for Appellants.

Zeff Weiss, Andrew J. Miroff, Brian J. Paul, Ice Miller LLP, Indianapolis, IN, Attorneys for Appellees.

## OPINION

BAKER, Chief Judge.

Two separate but related entities entered into mortgages on the same day. The mortgages refer to a cross-guaranty, but no such document was ever executed by the parties. Ten years later, the lending bank is attempting to enforce a non-executed, undated draft of the cross-guaranty against the debtors. Among other things, we find herein that the statute of frauds prohibits the bank from enforcing the cross-guaranty against them.

Appellants/cross-appellees Wells Fargo Bank, N.A. (Wells Fargo), and Midland Loan Services, Inc. (Midland), (collectively, the Appellants) appeal the trial court's orders denying their motion for judgment on the pleadings and granting the motion for judgment on the pleadings of appellees-cross-appellants Tippecanoe Associates, LLC (Tippecanoe), Larry D. Contos, Paul M. Nicholson, and Scatterfield Road Associates, LLC (Scatterfield), (collectively, the Appellees).

The Appellants argue that Midland is an improper party to this litigation, that the trial court erred by concluding that a non-executed, undated cross-guaranty was not part of a mortgage executed by Scatter-field, and that the trial court should have granted the motion to appoint a receiver over Scatterfield. The Appellees cross-appeal, arguing that the order appointing a receiver over Tippecanoe is erroneous to the extent that it authorizes the receiver to hold a private sale of the mortgaged property before a sheriff's sale can take place and without Tippecanoe's consent.

We find that Midland is an improper party to this litigation, that the statute of frauds prohibits the unexecuted cross-guaranty from being enforced against Scatterfield, that the denial of the motion to appoint a receiver over Scatterfield was harmless error, and that the Tippecanoe receivership order impermissibly stripped the statutory right of redemption from Tippecanoe. Thus, we affirm in part, reverse in part, and remand with instructions detailed below.

## FACTS

On July 31, 1998, WMF Capital Corporation (WMF) made two different loans to two different entities.[1] The first was to Scatterfield for $16.8 million, and this loan was secured by a mortgage on commercial real estate located in Madison County. The second loan was to Tippecanoe, which was a related but separate entity, for $15.2 million, and it was secured by a mortgage on commercial real estate located in Tippecanoe County. Contos and Nicholson are members of Scatterfield and Tippecanoe and serve as individual indemnitors and guarantors for both of the entities. Multi-tenant shopping centers sit on both properties. Both loans were scheduled to mature in ten years, on August 1, 2008.

During the loan negotiations, WMF asked that the two loans be cross-defaulted, meaning that a default under one loan constitutes a default under another loan,

---

1. Wells Fargo later acquired the loans from WMF and retained Midland to service them.

cross-collateralized, meaning that collateral pledged as security for one loan is also pledged as collateral for the other loan, and cross-guaranteed. Although Scatterfield admits that during those negotiations it initially agreed to a cross-default provision, it insists that it never agreed to a cross-guaranty. The cross-guaranty—which contains cross-default and cross-collateralization provisions—has undisputedly never been executed by the parties.

The Scatterfield Mortgage states that the mortgage is made, in part:

> FOR THE PURPOSES OF SECURING: ... (2) The guaranty of that certain promissory note, together with any and all renewals, modifications, consolidations and extensions thereof, of even date with this Mortgage, made by [Tippecanoe] to the order of Mortgagee in the original principal amount of [$15.2 million] ... pursuant to the Cross Guaranty and Contribution Agreement of even date herewith by and between Mortgagor, [Scatterfield, Nicholson, and Contos].

Appellants' App. p. 57. The Tippecanoe Mortgage contains an identical provision referencing the Scatterfield Mortgage.

In the spring of 2008, Tippecanoe fell behind on its loan payments. At that time, Scatterfield was current with its payments. In June 2008, with the August 1, 2008, maturation date approaching, Midland gave Scatterfield a payoff quote, which reflected the amount Scatterfield would have to pay in exchange for a release of its mortgage. The quote made no mention of a cross-guaranty agreement or the Tippecanoe Loan.

On July 31, 2008, one day before the Scatterfield loan matured, Midland rescinded the payoff quote, claiming that the Scatterfield and Tippecanoe loans were cross-guaranteed and cross-collateralized. Thus, Midland indicated that the Scatter-field mortgage would not be released without payment in full on both loans. One week later, Wells Fargo sent a default notice to Scatterfield for failing to tender payment in full on both loans by August 1. Wells Fargo stated that the loans were guaranteed by a "Cross Guaranty and Contribution Agreement" that was "executed" by Scatterfield, Tippecanoe, Nicholson, and Contos. *Id.* at 204, 207. Scatterfield denied that the parties had reached such an agreement, denied that such an agreement had been executed, and demanded that Wells Fargo produce the alleged agreement, which it never did.

Eventually, in response to a request from Wells Fargo's attorney, Scatterfield's attorney sent Wells Fargo a copy of an undated draft cross-guaranty agreement that WMF had initially proposed in 1998. It is undisputed that the agreement was never executed. Wells Fargo then demanded that this draft cross-guaranty be executed by Tippecanoe, Scatterfield, Nicholson, and Contos.

With the Tippecanoe loan in default, on September 9, 2008, Wells Fargo initiated a foreclosure action against Tippecanoe, Contos, and Nicholson in Tippecanoe County court. The complaint did not reference any cross-guaranty with Scatterfield.

On September 29, 2008, Scatterfield filed a complaint in Madison County against Wells Fargo and Midland, seeking a declaratory judgment that no cross-guaranty existed and that the Appellants were required to release the Scatterfield Mortgage upon payment of the Scatterfield Loan. Wells Fargo eventually answered the complaint and filed counterclaims, including a claim for foreclosure, and attached the draft cross-guaranty, claiming that the transacting parties must have in-

tended for the draft to be signed and that it should be enforced.

On December 10, 2008, Wells Fargo filed a motion for a receiver over Tippecanoe in the Tippecanoe County litigation. That motion was granted on February 5, 2009, and, among other things, the trial court in that action gave the receiver the power to sell the Tippecanoe property at a private sale, without Tippecanoe's consent, before a sheriff's sale could even be held.

On February 11, 2009, the Tippecanoe County and Madison County actions were consolidated in Tippecanoe County. On February 20, 2009, Scatterfield filed a motion for judgment on the pleadings as to its complaint against the Appellants, and on February 23, 2009, the Appellants filed a cross-motion for judgment on the pleadings. Following a hearing, the trial court summarily granted Scatterfield's motion on April 2, 2009, and summarily denied the Appellants' motion on April 15, 2009.[2]

Additionally, the Appellants had filed a motion for a receiver over Scatterfield on January 6, 2009, and on April 21, 2009, the trial court denied that motion, finding as follows:

> ... the Court notes that the appointment of a receiver is strongly disfavored. *Indianapolis Machinery Co. v. Curd,* [247 Ind. 657] 221 N.E.2d 340 (1966). Here, the evidence shows that [the Appellants] refused, and likely will still refuse, to allow payoff of the outstanding indebtedness at par despite the fact that no cross guaranty agreement exists between the two loans (which is the reason [the Appellants have] offered for why they refused to accept full payoff of the loan at maturity). While cognizant of the Indiana Foreclosure Statute ... and the

Indiana Court of Appeals decision in *Citizens Financial Services v. Innsbrook Country Club, Inc.,* 833 N.E.2d 1045, 1054 (Ind.Ct.App.2005), this Court does not view either to stand for the proposition that a party seeking a receivership can wrongfully create the alleged default condition and then seek a receivership based upon that condition. That is what has occurred here. As [the Appellants] come [ ] with unclean hands, they are not entitled to the equitable relief of a receivership.

*Id.* at 32–33. The trial court certified the orders for interlocutory appeal, and this court accepted jurisdiction and consolidated all appeals in this matter.

The Appellants now appeal the trial court's orders granting Scatterfield's motion for judgment on the pleadings, denying the Appellants' motion for judgment on the pleadings, and denying the Appellants' motion for a receiver over Scatterfield. The Appellees cross-appeal the order permitting the receiver over Tippecanoe to sell the Tippecanoe property at a private sale, without Tippecanoe's consent, before a sheriff's sale could even be held.

## DISCUSSION AND DECISION

### I. Midland

■ In the Appellants' motion for judgment on the pleadings, they argued that Midland is not a proper party to this lawsuit, inasmuch as it was not a party to any of the Scatterfield loan documents, including the mortgage and promissory note, and is not in privity of contract with Scatterfield. A Trial Rule 12(C) motion attacks the legal sufficiency of the pleadings and is subject to a de novo review. *Fox Dev., Inc. v. England,* 837 N.E.2d 161, 165 (Ind. Ct.App.2005).

---

**2.** The trial court's order disposed of Scatterfield's complaint but did not dispose of the

Appellants' counterclaims against Scatterfield; thus, those claims are still pending.

■ The authority of the trial court to grant declaratory relief is set forth in the Declaratory Judgment Act, which is found in Indiana Code chapter 34–14–1–1. The purpose of the Act is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered." Ind.Code § 34–14–1–12. The basis of jurisdiction under the Act "is a justiciable controversy or question, which is clearly defined and affects the legal right, the legal status, or the legal relationship of parties having adverse interests." *Little Beverage Co., Inc. v. DePrez*, 777 N.E.2d 74, 83 (Ind.Ct.App. 2002). Thus, when declaratory relief is sought, proper parties include those persons "who have or claim any interest that would be affected by the declaration...." I.C. § 34–14–1–11.

Here, Scatterfield sought to construe a contractual relationship via a declaratory judgment action, which is explicitly permitted by statute. *See* I.C. § 34–14–1–3 (holding that "[a] contract may be construed either before or after there has been a breach of the contract"). Proper parties to this action, therefore, include those persons who have any interest that would be affected by a declaration regarding the Scatterfield loan documents. There is no question that Midland was an active participant in the interactions that led to this lawsuit; indeed, it was acting as Wells Fargo's loan servicer and agent. As put by Scatterfield, Midland was Wells Fargo's "mouthpiece" during the relevant period of time. Appellees' Br. p. 23.

Acting as an agent or a "mouthpiece," however, does not necessarily mean that the trial court's order herein—whichever way it may have turned out—would have affected a legal right, legal status, or legal relationship of Midland. On the contrary, Midland was merely acting at the behest of its principal, Wells Fargo, and presumably following Wells Fargo's instructions. Midland is not a party to the contracts being construed—it does not have a proverbial dog in this fight. Therefore, we can only conclude that Midland is not a proper party to this declaratory action and reverse the trial court's order denying the Appellants' motion for judgment on the pleadings in that respect only.

## II. Cross–Guaranty

Next, we must consider whether the non-executed draft of the cross-guaranty was incorporated into the loan documents. The trial court concluded that the loans were not cross-collateralized or -guaranteed, and Wells Fargo argues that the trial court was incorrect.

### A. Statute of Frauds

■ Contracts subject to the statute of frauds must be in writing and signed by the party against whom enforcement is sought. Ind.Code § 32–21–1–1(b). It is undisputed that the cross-guaranty is subject to the statute of frauds, inasmuch as it is a promise to answer for the debt of another. I.C. § 32–21–1–1(b)(2). Inasmuch as it is also undisputed that the cross-guaranty was never executed or signed by Scatterfield, Wells Fargo must establish that it was incorporated into a document that was executed—the Scatterfield Mortgage—to enforce it against Scatterfield.[3]

---

3. We reject Wells Fargo's apparent argument that the Scatterfield Mortgage itself is the cross-guaranty, inasmuch as the mortgage is missing multiple key terms and conditions, including a payment trigger, payment terms, the amount to be paid, and the method for crediting payments. *See Nat'l By–Prods., Inc. v. Ladd*, 555 N.E.2d 518, 520 (Ind.Ct.App. 1990) (finding that a third-party guaranty must be in writing, signed by the party against whom enforcement is sought, and

Wells Fargo directs our attention to *Block v. Sherman*, in which this court held that under certain circumstances, a document can satisfy the statute of frauds if it consists of several writings:

> ... a memorandum [satisfying the statute of frauds] may consist of several writings though one writing only is signed, if the signed writing is annexed to the other writings by the party to be charged, or the signed writing refers to the unsigned writing so as to make it a part of the instrument which refers to it....

> \* \* \*

> ... Where we have a signed instrument and an unsigned one, the connection between the two instruments must appear by internal evidence derived from the signed instrument. This connection cannot be shown by parol evidence concerning the intentions or actions of the parties. *The signed instrument must so clearly and definitely refer to the unsigned one that by force of the reference the unsigned one becomes a part of the signed instrument.*

109 Ind.App. 330, 34 N.E.2d 951, 953–54 (1941) (emphasis added). What we must determine, therefore, is whether the signed Mortgage so clearly and definitely refers to the unsigned cross-guaranty that by force of that reference, the cross-guaranty became a part of the Mortgage.

As noted above, the Scatterfield Mortgage states that the Mortgage is made, in part:

> FOR THE PURPOSES OF SECURING: ... (2) The guaranty of that certain promissory note, together with any and all renewals, modifications, consolidations and extensions thereof, of even date with this Mortgage, made by [Tip-

pecanoe] to the order of Mortgagee in the original principal amount of [$15.2 million] ... pursuant to the Cross Guaranty and Contribution Agreement of even date herewith by and between Mortgagor, [Scatterfield, Nicholson, and Contos].

Appellants' App. p. 57. Unlike the Mortgage, which refers to a "Cross Guaranty and Contribution Agreement, the remaining Scatterfield loan documents either refer to a "Cross Guaranty and Security Agreement," appellees' app. p. 25 (assignment of leases and rent), 49 (hazardous substances indemnity agreement), 72 (indemnity and guaranty agreement), or are silent as to the existence of a cross-guaranty.

The unexecuted cross-guaranty, which Wells Fargo did not even have in its records, is entitled "Cross–Guaranty and Contribution Agreement[.]" Appellants' App. p. 148. The document is undated and unsigned.

The Scatterfield Mortgage obviously explicitly refers to a cross-guaranty agreement. But the Mortgage does not enlighten the reader as to the terms of the cross-guaranty. Thus, there is simply no way to know whether the draft that Scatterfield had in its files was a final draft or was, instead, a draft in a series of negotiations over terms that were never agreed upon. The Mortgage refers to an agreement "of even date," appellants' app. p. 57, but the cross-guaranty is undated. There is disagreement within the Scatterfield loan documents about the title of the cross-guaranty. To resolve these issues, we would have to resort to parol evidence, which is not permitted when engaging in this type of analysis. *Block*, 109 Ind.App. 330, 34 N.E.2d at 954. Under these circumstances, we find that the Scatterfield

contain all essential terms of the third-party     guaranty).

Mortgage does not so clearly and definitely refer to the unsigned, undated cross-guaranty that by force of that reference, the cross-guaranty became a part of the Mortgage. Therefore, the statute of frauds prohibits Wells Fargo from enforcing the cross-guaranty against Scatterfield and the trial court properly granted Scatterfield's motion for judgment on the pleadings and denied Wells Fargo's cross-motion for judgment on the pleadings on this basis.

### B. Indiana Lender Liability Act

■ Wells Fargo argues that the Indiana Lender Liability Act (the ILLA)[4] prevents us from reaching this conclusion. Specifically, Wells Fargo contends that this result necessarily means that the original Mortgage has been amended. The ILLA, however, provides that a credit agreement may be amended or modified only via a written agreement containing all material terms and conditions that is signed by the creditor and the debtor. I.C. § 26–2–9–5. Therefore, Wells argues that the cross-guaranty may only be omitted from the terms of the Scatterfield Mortgage if the modification occurs in a signed writing.

"Modification" and "amendment" both imply change and revision. Our conclusion herein is that the cross-guaranty provision in the Mortgage was, essentially, meaningless from the start. When the parties either failed to agree upon the terms of a cross-guaranty, or failed to ensure that the final version was executed, their own conduct resulted in a document that contained a provision referring to a document that did not exist. In reaching that conclusion, we have not amended the Mortgage, and in making its argument, Scatterfield is not requesting a modification. Instead, we have simply interpreted these documents

and their inconsistencies to the best of our ability, and have found that the unexecuted cross-guaranty does not survive the statute of frauds. This analysis does not run afoul of the ILLA.

### III. Receivership Issues

### A. Scatterfield Receiver

■ Wells Fargo next argues that the trial court erred by denying its motion for a receiver to be appointed over Scatterfield. In reviewing an interlocutory order regarding the appointment of a receiver, we review the trial court's order for an abuse of discretion, construing the evidence and reasonable inferences in the trial court's favor. *Citizens Fin. Servs., FSB v. Innsbrook Country Club, Inc.*, 833 N.E.2d 1045, 1053 (Ind.Ct.App.2005).

■ In support of its argument, Wells Fargo directs our attention to Indiana Code section 32–30–5–1, which provides, in pertinent part, as follows:

A receiver *may* be appointed by the court in the following cases:

\* \* \*

(4) In actions in which a mortgagee seeks to foreclose a mortgage. However, upon motion by the mortgagee, the court *shall* appoint a receiver if, at the time the motion is filed, the property is not occupied by the owner as the owner's principal residence and:

(A) it appears that the property is in danger of being lost, removed, or materially injured;

(B) it appears that the property may not be sufficient to discharge the mortgaged debt;

(C) either the mortgagor or the owner of the property has agreed in the mortgage or in some other writing to the appointment of a receiver;

---

**4.** Ind.Code § 26–2–9–1 et seq.

(D) a person not personally liable for the debt secured by the mortgage has, or is entitled to, possession of all or a portion of the property;

(E) the owner of the property is not personally liable for the debt secured by the mortgage; or

(F) all or any portion of the property is being, or is intended to be, leased for any purpose.

I.C. § 32–30–5–1(4) (Subsection 4) (emphases added). Here, it is undisputed that (1) the Scatterfield property is not occupied by Scatterfield as its principal residence, (2) Scatterfield agreed in the Mortgage to the appointment of a receiver in the event of foreclosure proceedings, appellants' app. p. 100, (3) the Scatterfield property is a commercial retail complex occupied by tenants who are entitled to possess a portion of the property and who are not liable for the debt secured by the mortgage, and (4) all or any portion of the property is being leased to those tenants. Pursuant to Subsection 4, therefore, the appointment of a receiver was mandatory. *See Citizens Fin. Servs.,* 833 N.E.2d at 1054 (holding that the language of Subsection 4 is unambiguous and mandatory and reversing the trial court's denial of the bank's petition for appointment of a receiver); *KeyBank Nat'l Ass'n v. Michael,* 737 N.E.2d 834, 847 (Ind.Ct.App.2000) (same).

Pursuant to this unambiguous statutory language and the undisputed evidence establishing that the requirements were fulfilled, the trial court should have granted Wells Fargo's motion to appoint a receiver over Scatterfield. That conclusion does not end our analysis, however. Had a receiver been appointed, it would have been, among other things, securing the rents and profits of the Scatterfield property and holding them in escrow pending the final determination in Wells Fargo's

cross-complaint for foreclosure. Ind.Code § 32–29–7–11(a).

We have already concluded herein that the non-executed cross-guaranty was not a part of the Scatterfield Mortgage and that Scatterfield is not bound thereby. Thus, Scatterfield's failure to pay off the Tippecanoe Mortgage did not constitute a default. As for Scatterfield's failure to pay off its own Mortgage in a timely fashion, we note that the trial court found that the evidence established that Wells Fargo refused, and would have continued to refuse, to accept payment of the Scatterfield Mortgage without an accompanying payment on the Tippecanoe Mortgage. Appellants' App. p. 32–33. The record further establishes that Scatterfield made timely payments on the Mortgage for ten years and was prepared to comply with Wells Fargo's payoff statement until the bank rescinded the statement, citing the cross-guaranty, one day before the loan was due to mature.

Under these circumstances, we are remanding with instructions that Wells Fargo provide a reasonable payoff statement within a reasonable period of time to be determined by the trial court and that Scatterfield then be given a reasonable period of time to pay off the Mortgage accordingly. The payoff statement may not include any penalties—including attorney fees—for Scatterfield's decision to file this litigation and take the positions it has taken herein, which we have adopted. If Scatterfield complies and pays off the Mortgage, then Wells Fargo's foreclosure action will be moot. In that situation, had the receiver been appointed and collecting rents and profits, those monies would simply be returned to Scatterfield, and Wells Fargo would be charged with the cost of the receiver. Thus, the failure to appoint a receiver would merely be harmless error.

If, however, Scatterfield is unable to comply with the new payoff statement, then at that point it would, indeed, be in default. At that time, the trial court would, of course, appoint a receiver. But at this time, we find that the trial court's decision to deny the request for a receiver was, at most, harmless error.[5]

### B. Tippecanoe Receiver: Cross–Appeal

■ Finally, the Appellees cross-appeal, arguing that the trial court erred by giving the receiver appointed over Tippecanoe the power to sell the Tippecanoe property at a private sale, without Tippecanoe's consent, before a sheriff's sale could even be held.

■ The general receivership statute provides a non-exhaustive list of the powers a trial court may grant to a receiver:

> The receiver may, under control of the court or the judge:
> (1) bring and defend actions;
> (2) take and keep possession of the property;
> (3) receive rents;
> (4) collect debts; and
> (5) sell property;
> in the receiver's own name, and generally do other acts respecting the property as the court or judge may authorize.

I.C. § 32–30–5–7(5). The more specific statute governing receiverships in mortgage foreclosure actions, however, explains the receiver's role as follows:

> If the court appoints a receiver of mortgaged property, the receiver shall take possession of the mortgaged property, collect the rents, issues, income, and profits and apply the rents, issues, income, and profits to the payment of taxes, assessments, insurance premiums, and repairs required in the judgment of the receiver to preserve the security of the mortgage debt. The receiver shall promptly file a final report with the clerk of the court and ... account for and pay over to the clerk ... the balance of income or other proceeds that remain in the receiver's possession.

I.C. § 32–29–7–11(a). This statute does not include the right to sell the mortgaged property at a private sale. *See Ross v. State*, 729 N.E.2d 113, 116 (Ind. 2000) (holding that "[w]hen faced with a general statute and a specific statute on the same subject, the more specific one should be applied"), *superseded on other grounds as stated in Mills v. State*, 868 N.E.2d 446 (Ind. 2007).

Every defendant in a mortgage foreclosure action has the right to redeem its property by paying off the amount due at any time before the property is sold at a sheriff's sale. I.C. § 32–29–7–7. The Appellees argue that by granting the receiver over Tippecanoe the authority to sell the property at a private sale, without Tippecanoe's consent and before a sheriff's sale could be held, the trial court essentially stripped Tippecanoe of its statutory right of redemption.

■ The only "sale" contemplated by the statutes governing receiverships over mortgage property is a sheriff's sale. I.C. §§ 32–29–7–3, –4, –7, –8, –9, –10. Thus, all property owners are entitled to redeem their property up to the date on which their property is sold by the sheriff. *See also* I.C. § 32–29–1–3 (prohibiting a mortgage instrument from authorizing the mortgagee—i.e., the bank—from selling the mortgaged property); *Ellsworth v. Homemakers Fin. Serv., Inc.*, 424 N.E.2d 166, 169 (Ind.Ct.App.1981) (holding that "[a] mortgagee is not permitted to sell

---

**5.** Given this conclusion, we need not address Scatterfield's argument that equity permitted the trial court to sidestep the mandatory language contained within Subsection 4.

mortgaged premises, but such sale shall be made by judicial proceeding" and that "[t]he judgment of foreclosure shall order the mortgaged premises sold by the sheriff"). It must be true, therefore, that any receiver charged with preserving and maintaining mortgaged property must do so through the date of the sheriff's sale and may not sell the real property prior to that time without the owner's consent. By giving the receiver herein the authority to sell the Tippecanoe property prior to a sheriff's sale and without Tippecanoe's consent, the trial court stripped Tippecanoe of its statutory right of redemption.

■ Wells Fargo does not dispute any of the Appellees' arguments in this regard. Instead, it argues that Tippecanoe waived its right of redemption by executing the Mortgage, which provides that "Mortgagor . . . waives, releases, relinquishes and forever foregoes all rights and periods of redemption provided under applicable law." Appellants' App. p. 170. Given this express contractual waiver, Wells Fargo argues that the trial court did not err in its award of powers to the receiver.

Wells Fargo directs our attention to our Supreme Court's decision in *Ferguson v. Boyd*, in support of its waiver argument. 169 Ind. 537, 81 N.E. 71, 74 (1907). In *Ferguson*, our Supreme Court found that the "right of redemption may *subsequently* be lost to him by a fair contract which he has voluntarily entered into for the surrender of such right." *Id.* (emphasis added) As Scatterfield points out, however, in *Ferguson*, the mortgagor waived the right of redemption *after* default had already occurred—an important distinction, inasmuch as Indiana courts have regularly refused to find waiver of the right to redemption when the waiver is signed *before* default. *See Fed. Land Bank of Louisville v. Schleeter*, 208 Ind. 9, 193 N.E. 378, 379–80 (1934) (finding that it was "well

settled that conditions in a mortgage tending to limit or defeat the right of redemption are void"); *Turpie v. Lowe*, 114 Ind. 37, 15 N.E. 834, 840 (1888) (holding that the right of redemption "'cannot be waived or abandoned by any stipulation of the parties at the time, even if embodied in the mortgage'" and that "'[t]his is a doctrine from which a court of equity never deviates'") (quoting *Peugh v. Davis*, 96 U.S. 332, 337, 24 L.Ed. 775 (1877)).

Here, Wells Fargo is attempting to enforce a waiver that was executed before the default occurred. Pursuant to the caselaw cited herein, we find that this waiver may not be enforced. Therefore, the trial court erred to the extent that it gave the receiver over Tippecanoe the authority to sell the property at a private sale without Tippecanoe's consent, and we remand with instructions to amend the receivership order accordingly.

## CONCLUSION

In sum, we have found that Midland is not a proper party to this litigation. Additionally, we have found that the statute of frauds prohibits the non-executed, undated cross-guaranty from being enforced against Scatterfield, and that this conclusion does not amend the mortgage such that the ILLA is implicated. Finally, we have found that the trial court's decision to deny the motion to appoint a receiver over Scatterfield was harmless error and that the order appointing a receiver over Tippecanoe was erroneous to the extent that it gave the receiver the power to hold a private sale of the property without Tippecanoe's extent.

The judgment of the trial court is affirmed in part, reversed in part, and remanded with the following instructions: (1) dismiss Midland from these proceedings; (2) direct Wells Fargo to prepare a reasonable payoff statement within a rea-

sonable period of time to be determined by the trial court, affording Scatterfield a reasonable period of time to pay off the Mortgage; and (3) amend the Tippecanoe receivership order consistent with this opinion.

BAILEY, J., and ROBB, J., concur.